**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FRANCISCAN MISSIONARIES OF OUR LADY HEALTH SYSTEM
d/b/a OUR LADY OF LOURDES REGIONAL MEDICAL CENTER,
d/b/a OUR LADY OF THE LAKE ASCENSION COMMUNITY HOSPITAL (SAINT ELIZABETH HOSPITAL),
d/b/a OUR LADY OF THE LAKE REGIONAL MEDICAL CENTER, AND
d/b/a SAINT FRANCIS MEDICAL CENTER,
4200 Essen Lane
Baton Rouge, LA 70809

Plaintiffs,

v.

KATHLEEN SEBELIUS, Secretary
United States Department of Health and Human Services,
200 Independence Avenue, S.W.
Washington, DC 20201,

Defendant.

Case No: ______________

**COMPLAINT**

The hospital Plaintiffs listed in the above caption (sometimes referred to collectively as the "Providers"), through their attorneys, for its Complaint against Defendant Kathleen Sebelius, in her capacity as Secretary of the United States Department of Health and Human Services, allege and state the following:

## I. INTRODUCTION AND NATURE OF SUIT

1. This is an action for the review of the final determination of the Department of Health and Human Services, Provider Reimbursement Review Board (the "Board" or "PRRB"),

denying the Providers a "good cause" extension to the 180-day filing deadline applicable to "final determinations" of the Secretary. 42 C.F.R. § 405.1836.

2. Under the Secretary's regulations, an appeal may be filed within three years of a final determination if good cause is shown for the delay. 42 C.F.R. § 405.1836(c)(2).

3. All of the Providers filed their appeals within three years of the publication of the Secretary's annual rulemakings governing the inpatient prospective payment system ("IPPS") for federal fiscal years ("FFY") 2011 and 2012.

4. Saint Francis Medical Center's appeal was also filed within three years of the publication of the Secretary's annual rulemaking governing the IPPS for FFY 2010.

5. In a decision dated September 27, 2013, the Board denied the providers a good cause extension for their appeals of these two rulemakings even though the appeals were initiated within three years of the publication of the rulemakings (the "Board's Decision"). *See* Attachment 1.

6. In particular, the Board noted that "knowledge of the issues surrounding the RFBNA can be impute to them as early as 2009 when the district court issued a decision in Cape Cod Hosp. v. Sebelius, 677 F. Supp. 2d 18, 29-32 (D.D.C. 2009)." Attachment 1 at 2.

7. The Board's denial of a good cause extension constitutes "an abuse of discretion" under the Administrative Procedure Act ("APA") and must be overturned. See 5 U.S.C. § 706(2)(A) (providing that a court may set aside agency action, findings, and conclusions which are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law") (emphasis added).

8. The Providers have unequivocally demonstrated good cause for their filing delay because it was CMS's own misstatements, obfuscation, and refusal to acknowledge its error that

prevented the Providers from timely appealing from the FFY 2010, 2011 and 2012 rulemakings. Both the doctrine of equitable estoppel and other equitable considerations bar the Secretary from now raising lack of timely filing as a defense in this action. Sebelius v. Auburn Reg'l Med. Ctr., 133 S. Ct. 817 (2013) (Sotomayor, J., concurring) ("equitable tolling [which the Court rejected] extends to circumstances outside both parties' control, the related doctrines of equitable estoppel and fraudulent concealment may bar a defendant from enforcing statute of limitations when its own deception prevented a reasonably diligent plaintiff from bringing a timely claim").

## II. PARTIES

9. Plaintiff owned or operated, or is the successor in interest to the entities that owned or operated, the following hospitals that bring this action (each hospital's Medicare Provider Number and name are listed below):

> 9.1 Franciscan Missionaries of Our Lady Health System d/b/a Our Lady of Lourdes Regional Medical Center, Medicare Provider No. 19-0102;
>
> 9.2 Franciscan Missionaries of Our Lady Health System d/b/a Our Lady of the Lake Ascension Community Hospital (Saint Elizabeth Hospital), Medicare Provider No. 19-0242;
>
> 9.3 Franciscan Missionaries of Our Lady Health System d/b/a Our Lady of the Lake Regional Medical Center, Medicare Provider No. 19-0064; and
>
> 9.4 Franciscan Missionaries of Our Lady Health System d/b/a Saint Francis Medical Center, Medicare Provider No. 19-0125.

10. Defendant Kathleen Sebelius is the Secretary of the United States Department of Health and Human Services ("HHS"), the Federal agency that administers the Medicare program. The Secretary is sued only in her official capacity. For the purposes of this Complaint, any reference to the Secretary is meant to refer to her, her subordinate agencies and officials, and to her official predecessors or successors, as appropriate given the context.

11. The Centers for Medicare and Medicaid Services ("CMS"), formerly known as the Health Care Financing Administration ("HCFA"), is a federal agency, within HHS and subordinate to the Secretary, that is responsible for the administration of the Medicare program.

**III. JURISDICTION AND VENUE**

12. This action arises under the Medicare Act, title XVIII of the Social Security Act (the "Act"), 42 U.S.C. § 1395 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq.

13. Jurisdiction is proper under 42 U.S.C. §§ 1395oo(a)(1)(A)(ii) and 1395oo(f)(1).

14. Venue is proper in this judicial district under 42 U.S.C. § 1395oo(f)(1).

15. The statute affords a provider the right to appeal to Federal district court from all "final determinations" of the Secretary, and a determination denying a good cause extension is such a final determination. 42 U.S.C. § 1395oo(f); see also IHG Healthcare v. Sebelius, 717 F. Supp. 2d 696, 703 (S.D. Tex. 2010) ("Nothing in the statute suggests that only a certain type of Board decision can be final, such as a ruling on the merits, or a ruling after a hearing.").

16. The regulation promulgated in 2008 purporting to prohibit judicial review of the Board's final determination with regards to good cause filing extensions conflicts with the plain language of the statute and is, therefore, a "nullity." See id. ("[b]ecause the regulation [42 C.F.R. § 405.1836(e)(4)] carves out an exception to the statutory mandate of judicial review for all final Board decisions, and cannot be reasonably construed otherwise, it is a nullity"); see also Auburn Reg. Med. Ctr v. Sebelius, 642 F.3d 1145, 1148 (D.C. Cir. 2011) (holding that "a dismissal [for lack of Board jurisdiction] is final in any sense of the word. It is not pending, interlocutory, tentative, conditional, doubtful, unsettled, or otherwise indeterminate") (overturned on other grounds by Sebelius v. Auburn Reg'l Med. Ctr., 133 S. Ct. 817 (2013)).

## IV. **THE MEDICARE PROSPECTIVE PAYMENT SYSTEM**

17. The Medicare statute establishes a system of health insurance for the aged, disabled, and individuals afflicted with end-stage renal disease.

18. Under 42 U.S.C. § 1395x(v)(1)(A), providers of inpatient services, such as the Providers, were historically entitled to payment from Medicare for their "reasonable costs" incurred in providing services to Medicare patients, in accordance with regulations adopted by the Secretary. Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted a prospective payment system ("PPS") to reimburse hospitals for inpatient hospital operating costs prospectively based on rates established for each diagnosis. See 42 U.S.C. § 1395ww(d).

## V. **CMS'S ERRONEOUS CALCULATION OF THE RURAL FLOOR BUDGET NEUTRALITY ADJUSTMENT**

### A. CMS's Misstatements Regarding Its Method of Calculating the RFBNA for FFY 2007

19. Each year, CMS issues an annual IPPS rulemaking for the purpose of announcing its payment rates and other policies to the hospital community. Since the inception of the RFBNA, the adjustment factors to the payment rates required to achieve budget neutrality under the RFBNA were included in these annual updates. See, e.g., 63 Fed. Reg. 41006-41010 (Jul. 31, 1998); 64 Fed. Reg. 41544-41549 (Jul. 30, 1999); 65 Fed. Reg. 47111-47116 (Aug. 1, 2000); 66 Fed. Reg. 39939-39946 (Aug. 1, 2001); 67 Fed. Reg. 50120-50126 (Aug. 1, 2002); 68 Fed. Reg. 45474-45480 (Aug. 1, 2003); 69 Fed. Reg. 49273-49282 (Aug. 11, 2004); 70 Fed. Reg. 47491-47498 (Aug. 12, 2005); 71 Fed. Reg. 47870, 48147 (Aug. 18, 2006); 72 Fed. Reg. 48165-48166 (Aug. 22, 2007); 73 Fed. Reg. 48434, 49070-49072 (Aug. 19, 2008).

20. CMS indicated in these annual updates that the RFBNA was being computed in a budget neutral manner. See, e.g., 71 Fed. Reg. at 48147 ("Section 4410 of Pub. L. 105-33

provides that, for discharges on or after October 1, 1997, the area wage index applicable to any hospital that is not located in a rural area may not be less than the area wage index applicable to hospitals located in rural areas in that State. This provision is required by section 4410(b) of Pub. L. 105-33 to be budget neutral. Therefore, we include the effects of this provision in our calculation of the wage update budget neutrality factor."). However, contrary to these representations, the adjustment factors were not budget neutral, but rather resulted in net savings to the government.

21. In particular, in the interim final PPS rule for FFY 2007, the Secretary described the simulation model and the calculation of the resulting budget neutrality adjustment as follows:

> [W]e used FY 2005 discharge data to simulate payments and compared aggregate payments using the FY 2006 relative [DRG] weights and <u>wage indexes</u> to aggregate payments using the FY 2007 relative [DRG] weights and <u>wage indexes</u>. The same methodology was used for the FY 2006 budget neutrality adjustment. . . . These budget neutrality adjustment factors are applied to the standardized amounts without removing the effects of the FY 2006 budget neutrality adjustments.

71 Fed. Reg. at 48147 (emphasis added).

22. The Secretary provided similar descriptions of the simulation model and the calculation of the resulting budget neutrality adjustment for the effect of the rural floor in the preambles to the final PPS rules for prior fiscal years. <u>See</u> 70 Fed. Reg. at 47493; 69 Fed. Reg. at 49275; 68 Fed. Reg. at 45475-76.

23. Beyond the above-quoted description, of the simulation model used to calculate budget neutrality adjustments to the standardized amounts, the Secretary's PPS rules for FFY 2007 and prior years did not address the specific data or data variables that were employed in the payment simulation model to calculate budget neutrality adjustments for the effect of the rural floor. <u>See</u> 71 Fed. Reg. at 48147; 70 Fed. Reg. at 47493; 69 Fed. Reg. at 49275; 68 Fed. Reg. at 45475-76.

24. The Secretary, however, did not calculate the budget neutrality adjustment for any year in the manner described in the above-quoted portion of the preamble to the final rule for FFY 2007, and in the above-cited portions of the preambles to the final rules for prior years.

25. It was only accidentally that the plaintiff in the Cape Cod case became aware of the deficiencies in the RFBNA computation, because of an inadvertent disclosure by a CMS employee in a May 2006 email to a consultant for Cape Cod Hospital. See Cape Cod Hosp. v. Sebelius, 630 F.3d 203, 207-208 (D.C. Cir. 2011). However, when the consultant brought the error to the attention of CMS, the agency did not even acknowledge the comment, nor did it take any affirmative action to correct the problem, in its 2007 IPPS update. Id. at 208. CMS further failed to disclose to hospitals the information which it clearly had in its possession pertaining to the deficiencies in the computation of the RFBNA.

26. The Secretary deliberately failed to inform the hospital community regarding these errors in its computation of the RFBNA, notwithstanding that the Secretary was, at least since 2006, aware that its method of computing the RFBNA was in violation of the law.

27. The Providers had no reasonable means of identifying the errors involved in the Secretary’s computation of the RFBNA. The Secretary’s budget-neutrality calculations are not published. As a result, there was no readily available means of learning of the Secretary's error, or even of duplicating the Secretary’s calculations. Providers were therefore precluded from obtaining the knowledge required to timely file their appeals in connection with the errors in the computation of the RFBNA. See 42 U.S.C. § 1395oo.

28. In the 2008 proposed rule, CMS proposed to make a one-time positive adjustment of 1.002214 to the standardized amount for FY 2008 to address the transition to a noncumulative system of budget neutrality adjustment. However, this adjustment left in place the improper

cumulative adjustments for all prior years. See generally, Cape Cod Hosp. v. Sebelius, 630 F.3d 203 (D.C. Cir. 2011).

29. By letter dated June 11, 2007, a commenter timely submitted comments on CMS's proposed PPS rule for FFY 2008 which stated, inter alia:

a. CMS should explain the basis, purpose, and reason for the proposed change in implementation of the rural floor budget neutrality requirement;

b. CMS should disclose any known errors in the agency's prior calculations of the RFBNA and identify the impact of those errors on the current standardized amount that would be applied under the final rule for 2008;

c. CMS should explain the basis, purpose, and calculation of the proposed "Rural Floor Adjustment" that would increase the standardized amount by 0.2214 percent for 2008; and

d. CMS should correct the standardized amount for the effects of known errors in its calculation of the RFBNA in prior-periods and pay affected hospitals the additional sums due as a result of such correction.

B. Final Rule for 2008

30. The preamble to the final PPS rule for 2008 acknowledged that "[m]any commenters requested additional information as to the purpose" of the proposed change in implementation of the RFBNA. 72 Fed. Reg. at 47330. The preamble, however, does not state the basis, purpose, or reason for the proposed change in implementation of the rural floor budget neutrality requirement. See id.

31. The preamble to the final PPS rule for 2008 also acknowledged the June 11, 2007 comment claiming that the methodology for applying the RFBNA for prior years was flawed but, instead of admitting the fact of the matter, CMS remained agnostic:

> With regard to alleged errors in FYs 1999 through 2007, our calculation of budget neutrality in past fiscal years is not within the scope of this rulemaking. Even if errors were made in prior fiscal years, we would not make an adjustment to make up for those errors when setting rates for FY 2008.

72 Fed. Reg. at 47330 (emphasis added).

32. The preamble to the final rule for 2008 did not address whether the proposed change in implementation of the rural floor budget neutrality requirement would fix problems for prior, current, or future fiscal years stemming from errors in CMS's prior calculations of the RFBNA to the standardized amounts in prior years. See 72 Fed. Reg. at 47330.

C. Error in the Final Determinations for 2008

33. Because the RFBNA to the wage index for 2008 accounts for the full effect of the rural floor for 2008, 72 Fed. Reg. at 47329-30, that adjustment duplicates the RFBNA that were taken out of the standardized amount for all fiscal years prior to 2007, which were not added back to the standardized amount through the positive Rural Floor Adjustment to the standardized amount for 2008. 72 Fed. Reg. at 47421.

34. As a result of that duplication, aggregate PPS payments made for discharges in 2008, and all subsequent years, including the 2010, 2011 and 2012 Federal fiscal years at issue here, are less than aggregate payments that would be made for discharges in all those years if the rural floor had never been established.

D. History of Court Decisions

35. When the Secretary's RFBNA methodology was challenged in district court in Cape Cod, 677 F. Supp. 2d at 31, the district court held in favor of the Secretary finding that "[n]othing in the language of the statute requires the Secretary to recalculate the budget neutrality factors for prior years. The statute only requires the Secretary to ensure budget neutrality in the 'fiscal year' for which the adjustment is applicable." In addition, the court held

that it found "it reasonable to interpret the [budget neutrality] provision to require that aggregate payments in the fiscal year not be greater or less than those that would have been made in the fiscal year without such adjustment" so that mistakes made in prior years were irrelevant. Id.

36. The D.C. Circuit Court, however, overturned this decision in Cape Cod, 630 F.3d 203, where it held that the Secretary's application of the RFBNA for FY 2007 and 2008 was improperly computed as a result of these methodological/mathematical errors on the part of the Secretary. While the years specifically before the court in Cape Cod were FY 2007 and 2008, the court's decision and CMS's subsequent acquiescence, was clear that the calculation error encompassed fiscal years 1999 through 2012. See, e.g., 76 Fed. Reg. 51476 (Aug. 18, 2011).

37. Adjustments for FY 2012 were implemented in the 2012 IPPS rule issued on August 18, 2011. The Secretary provided the calculations used to arrive at the amount of the 2012 adjustment, which necessarily included remodeled calculations for FYEs 1999-2006. 76 Fed. Reg. 51476, 51788 (Aug. 18, 2011).

38. The Secretary had not prior to this Federal Register notice publicly quantified the amount of the adjustment required to compensate for the errors made in applying the RFBNA for FYEs 1999-2006. The adjustment for FYE 2012 also did not provide retroactive relief for the shortfalls resulting from the improper computation of the RFBNA for any years prior to the years at issue in Cape Cod.

## VI.   REVIEW OF PPS PAYMENT DETERMINATIONS

### A.   Administrative Appeals

39. A provider may appeal to the Board if it "is dissatisfied with a final determination of the Secretary as to the amount of the payment." See 42 U.S.C. § 1395oo(a)(1)(A)(ii).

40. In addition to having the authority to make substantive decisions concerning Medicare under 42 C.F.R. § 405.1873, the Board is authorized to decide questions relating to its

jurisdiction including whether to grant, for good cause, an extension to the 180 day filing deadline of up to three years. 42 C.F.R. § 405.1836.

41. The decision of the Board on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the Board's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§405.1875 and 405.1877. The Secretary has delegated her authority under the statute to review PRRB decisions to the CMS Administrator.

42. Unless the Secretary reverses, affirms, or modifies the Board's decision with respect to a provider's appeal within 60 days of the date the provider is notified of the decision, the decision constitutes a final administrative action. 42 U.S.C. § 1395oo(f); 42 C.F.R. §§ 405.1875, 405.1877.

B. Good Cause Filing Extensions

43. Except for good cause, 42 C.F.R. § 405.1836, appeals should be filed within "180 days after notice of the Secretary's final determination," 42 U.S.C. § 1395oo(a)(3).

44. Upon a showing of extraordinary circumstances beyond a provider's control—i.e., good cause—the Board may extend the normal 180-day time limit for an appeal provided that the request was made within three years of the date of receipt of the final determination. 42 C.F.R. § 405.1836(b), (c).

45. In Sebelius v. Auburn Regional Medical Center, 133 S. Ct. 817 (2013), the Supreme Court held that the 180-day time limit set out under 42 U.S.C. § 1395oo(a)(3) is not "jurisdictional"—i.e., meaning that the time limit may be enlarged by an agency or a court, see id. at 821-22.

46. The Auburn Court held that "[the 180-day] limitation therefore does not bar the modest extension contained in the Secretary's regulation," i.e., the good cause extension provision. Id. at 830.

47. Justice Sotomayor wrote in her concurring opinion that "[w]e would face a different case if the Secretary's regulation did not recognize an exception for good cause or defined good cause so narrowly as to exclude cases of fraudulent concealment and equitable estoppel." Id.

48. The Secretary's final rule governing Medicare inpatient prospective payments for each federal fiscal year is considered "a final determination of the Secretary as to the amount of . . . payment," and is therefore subject to appeal under 42 U.S.C. § 1395oo(a). See, e.g., D.C. Hosp. Ass'n Wage Index Grp. Appeal (HCFA Admin. Dec. Jan. 15, 1993). The date the rulemaking is published in the Federal Register is considered the date of notice for purposes of calculating the appeal filing deadlines. See 44 U.S.C. § 1507.

## VII. PROCEDURAL HISTORY AND MATTERS SPECIFIC TO THIS CASE

### A. The Providers' Board Appeals and the Board's Decisions

49. The Secretary's final rule for FFY 2010 was published on August 27, 2009, the 180-day period to file an appeal from this rule expired on February 23, 2010, and the deadline to file an appeal from this "final determination" could be extended, for good cause, until August 27, 2012.

50. The Secretary's final rule for FFY 2011 was published on August 16, 2010, the 180-day appeal window expired on February 12, 2011, and the deadline to file an appeal from this "final determination" could be extended, for good cause, until August 16, 2013.

51. The Secretary's final rule for FFY 2012 was published on August 18, 2011, the 180-day appeal window expired on February 14, 2012, and the deadline to file an appeal from this "final determination" could be extended, for good cause, until August 17, 2014.

52. Since the Providers filed their appeals of these rules before August 16, 2013 (specifically the appeals were filed on January 30, 2012 and September 28, 2012), they were filed within the three-year extension period to appeal from both the FFY 2011 and FFY 2012 final rules.

53. In addition, Saint Francis Medical Center's appeal, which was filed on January 30, 2012, was filed within the three-year extension period to appeal from the FFY 2010 final rule.

54. By letter dated September 27, 2013, the Board issued its final decision in which it denied the Providers' request for equitable tolling, pursuant to the Supreme Court's recently issued decision in *Auburn*, and held that the Providers did not otherwise demonstrate good cause for late filing for those appeals that were filed within three years of the publication of the Federal Register notices. See Attachment 1. The Board, therefore, dismissed the appeals as "not timely filed." Id.

55. The Board denied the Providers a good cause extension for a single reason: "because knowledge of the issues surrounding the RFBNA can be impute to them as early as 2009 when the district court issued a decision in Cape Cod Hosp. v. Sebelius, 677 F. Supp. 2d 18, 29-32 (D.D.C. 2009)." Attachment 1 at 2.

56. The Board's Decision also provided that "[r]eview of this determination is available under the provisions of 42 U.S.C. § 1395oo(f) and 42 C.F.R. §§ 405.1875 and 405.1877." Id. at 3.

57. The Providers properly commenced this action in this Court pursuant to 42 U.S.C. § 1395oo(f)(1) within 60 days of receipt of the Board's decision.

## VIII. ASSIGNMENT OF ERRORS

### B. The Board's Denial of a Good Cause Extension Is an Abuse of Discretion

58. CMS's conduct in connection with its erroneous RFBNA — in particular, its concealment of the existence and the extent of its error and its affirmative misstatements regarding how the adjustment was calculated — prevented the Providers from filing their appeals within 180 days of the publication of the FFY 2010, 2011 and 2012 final rules. The doctrine of equitable estoppel and other equitable considerations, therefore, precludes the Secretary from invoking the 180-day filing deadline insofar as the determination is still within the three-year window for a good cause extension.

### C. CMS's Conduct Prevented the Providers from Filing Their Appeals Within 180 Days of the Publication of the Final Rules

59. As described in Paragraphs 19 through 34 of this Complaint, by repeatedly refusing to disclose the specific data that were employed in CMS's payment simulation model to calculate budget neutrality adjustments for the effect of the rural floor, see, e.g., 71 Fed. Reg. at 48147; 70 Fed. Reg. at 47493; 69 Fed. Reg. at 49275; 68 Fed. Reg. at 45475-76, and consistently incorrectly describing the simulation model used in the calculation of the budget neutrality adjustment, CMS prevented the Providers from timely appealing within 180 days of the FFY 2010, 2011, and 2012 final rules.

60. Even after CMS was advised in writing of its error, CMS pursued a path of obfuscation and concealment, first by ignoring solicited comments pointing out its error, then by making "black box" adjustments without publicly issuing any reasonable explanation or guidance for its methodology. See supra, Paragraphs 23 to 34.

61. CMS's conduct in this regard amounted to more than merely vague or misleading statements; it instead constituted affirmative misstatements that mislead the Providers and engendered confusion.

62. Providers have the right to expect that what the agency tells them is true.

63. Under principles governing equitable estoppel, the Secretary should therefore be estopped from denying a good cause filing extension when it was the agency's own misstatements and obfuscation that prevented the Providers from filing timely appeals.

64. Estoppel "is applied against a person whose words or conduct have induced another to act or refrain from acting in a manner that has resulted in harm or loss or would do so if the responsible person is not estopped." David K. Thompson, Equitable Estoppel of the Government, 79 COLUM. L. REV. 551, 552 (1979). Estoppel is an "equitable doctrine" and "a hallmark of the doctrine is its flexible application." Heckler v. Cmty. Health Services of Crawford County Inc., 467 U.S. 51, 60 (1984).

65. Unlike in Heckler v. Community Health Services, 467 U.S. 51, 60 (1984), where the Court denied estoppel, here the Providers relied upon statements from CMS itself and not merely an agency contractor. In addition, the Providers suffered a true detriment, beyond the "inability to retain money that it should never have received in the first place," id. at 61, because had the Providers timely filed an appeal, they would have received the benefit of the Circuit Court's decision in Cape Cod and a correction to their payment amounts.

D. The Providers Did Not Have Notice of CMS's RFBNA Error, or Any Remedy for that Error Until the D.C. Circuit's Cape Cod Decision

66. It was an abuse of discretion for the Board to hold that providers had notice of this issue from the District Court's decision in Cape Cod because that decision held that the Secretary calculated current year RFBNA correctly because she was under no obligation to fix

past errors. Cape Cod, 677 F. Supp. 2d at 31 (finding that it was "reasonable to interpret the [budget neutrality] provision to require that aggregate payments in the fiscal year not be greater or less than those that would have been made in the fiscal year without such adjustment" so that mistakes made in prior years were irrelevant).

67. To prevail on an appeal, providers must prove not only that the agency made a mistake, but that there is a legal remedy for that mistake.

68. This latter fact was not established until the Circuit Court's decision in Cape Cod. Cape Cod Hosp. v. Sebelius, 630 F.3d 203, 216-17 (D.C. Cir. 2011).

69. The agency did not acknowledge the former fact, i.e., that its calculation was contrary to law, until it published preamble language acquiescing to the Circuit Court's ruling on August 18, 2011. 76 Fed. Reg. 51476 (Aug. 18, 2011).

70. The final rule for FFY 2010 was issued on August 27, 2009 and the 180-day appeal period to file an appeal of this rule expired on February 23, 2010—almost a year before D.C. Circuit's Cape Cod decision and a year and half before CMS published preamble language interpreting that decision on August 18, 2011.

71. The final rule for FFY 2011 was published on August 16, 2010 and the 180-day appeal period to file a an appeal from this rule expired on February 12, 2011—just a month after the D.C. Circuit's Cape Cod decision and six months before CMS published preamble language interpreting that decision on August 18, 2011.

72. Expecting Providers to file an appeal within one month of the Circuit Court's decision in Cape Cod is unreasonable as proven by the fact that providers are generally afforded at least six months to file appeals. 42 U.S.C. § 139500(a)(3).

73. In analogous situations, courts have held that filing an appeal within eight months of a Circuit Court's decision was reasonable. See Monmouth Med. Ctr. v. Thompson, 257 F.3d 807, 814 (D.C. Cir. 2001) ("While the Ruling [being appealed] was issued in 1997, the court of appeals did not decide Monmouth — which announced for the first time that the Ruling constituted notice to the intermediaries of the inconsistency with applicable law of the Secretary's prior interpretation — until July 27, 2001") (emphasis added).

74. In addition, because the Secretary did not quantify her error until the August 2011 rulemaking, prior to that date the Providers could not ascertain the amount of the damages to ensure that the $50,000 amount in controversy jurisdictional requirement for PRRB appeals was met. See HCA Health Servs. of Okla., Inc. v. Shalala, 27 F.3d 614, 622 (D.C. Cir. 1994) (holding open the question of whether a reopening for a "cost item [that] . . . could not have been appealed when the original NPR was issued because it [the provider] did not satisfy the $10,000 jurisdictional threshold" should be given special consideration).

## IX. RELIEF REQUESTED

75. The Providers respectfully request that the Court enter an Order:

a. Reversing the Board's September 27, 2013 decision denying the Providers a good cause filing extension for FFYs 2010, 2011 and 2012;

b. Requiring the Board to grant the Providers a good cause filing extension for their appeals initiated within three years of the publication of the FFYs 2010, 2011 and 2012 rulemakings;

b. Requiring the Secretary to pay legal fees and costs of suit incurred by the Providers; and

c. Providing for such other relief as the Court may deem proper.

Respectfully submitted,

/s/ Daniel J. Hettich
Daniel J Hettich
 DC Bar No. 975262
KING & SPALDING LLP
1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, D.C.  20006-4706
(202) 626-9128 (phone)
(202) 626-3737 (fax)

Dated: November 27, 2013